# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EREIDA QUESADA,**

    **Plaintiff,**

**-vs-**                                                                 **Case No. 6:04-cv-1623-Orl-19DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED and REMANDED.**

## *I. BACKGROUND*

### A. Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on August 2, 2000. R. 44-46. She alleged an onset of disability on July 28, 2000, due to fibromyalgia, diabetes, osteoporosis, and lupus. R. 229-36. Her application was denied initially and upon reconsideration. R. 26, 36, 40-41.

Plaintiff requested a hearing, which was held on March 2, 2004, before Administrative Law Judge Albert Tutera (hereinafter referred to as "ALJ"). R. 228-37. In a decision dated December 12, 2002, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-18. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 13. The Appeals Council denied Plaintiff's request on September 9, 2004. R. 5-9. Plaintiff filed this action for judicial review on November 5, 2004. Doc. No. 1.

### B.   Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of fibromyalgia, diabetes, osteoporosis, and lupus. R. 229-36. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from systemic lupus erythematosus and hypertension, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary[1] work, as she could frequently lift/carry ten pounds occasionally lift/carry up to 20 pounds, and walk/stand or sit up to six hours in an eight-hour workday. R. 18, Finding 7. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were somewhat exaggerated for the reasons set forth in the body of the decision.[2] R. 16. Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work as an administrative assistant. R. 17. Accordingly, the ALJ determined that Plaintiff

---

[1] Although the ALJ followed the opinions of the state agency physicians which found Plaintiff capable of light work, he ultimately determined her to be capable of sedentary work. *See* R. 16-17 (stating RFC of "light" work in one instance and "sedentary" in another). Because the Court reverses on other issues, the inconsistency is not significant.

[2] Within the body of the decision, the ALJ discredited Plaintiff's reported physical limitations based on several specific inconsistencies between those limits, medical findings, Plaintiff's stated daily activities, and statements in the medical records that the reason she was not working was because she had moved from New York to Florida. R. 16.

was not under a disability, as defined in the Act, at any time through the date of the decision. R. 17, 18, Finding 10.

Although Plaintiff's brief is somewhat disjointed, with numbered paragraphs, no headings and no citation to the transcribed record, she basically argues three points of error. First, she argues that the ALJ erred by finding she had the RFC to perform her past relevant work contrary to treating doctor's statements. Second, she argues that the ALJ erred in evaluating her credibility and discrediting her complaints of pain. Third, Plaintiff asserts that the ALJ erred determining her English proficiency to be good (which it is not) and thus, failing to obtain vocational expert (VE) testimony regarding its impact on availability of other administrative assistant positions. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **REVERSED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *A. RFC AND THE TREATING PHYSICIANS' OPINIONS.*

Plaintiff claims that the ALJ should not have found her able to perform her past relevant work in light of findings assigned by Plaintiff's treating physicians, Dr. Anthony Okoh and Dr. Thomas Lafferty, which preclude her from working. Plaintiff contends that the ALJ gave controlling weight to the report of Dr. Medero, a consultative examining physician, rather than the reports of her treating physicians.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that the ALJ should not have discounted the medical findings of her treating physicians and should have given controlling weight to the opinion of the consultative physician, who has no specialized training in rheumatology or orthopaedics. The ALJ found:

> Based on their review of the evidence, the State Agency physicians opined that the claimant would be able to perform light work. . . . Based on the totality of the evidence, the undersigned concurs with the State Agency opinion, as it is consistent with the diagnostic and clinical findings (Social Security Ruling 96-6p). It is noted that the claimant's treating source, Dr. Anthony Okoh, indicated that the claimant demonstrated poor fine dexterity and 2/5 gross dexterity, but his findings are inconsistent with the clinical findings of Dr. Medero, as well as the findings of the Ocala Orthopeadic Group [by Dr. Lafferty] showing 5/5 motor strength and an intact sensory examination in all four extremities. They also found no evidence of synovitis in any joints and full range of motion of all joints except the shoulders. Thus, the undersigned is of the opinion that the claimant is capable of sedentary work as indicated by the State Agency physicians.

R. 16-17. The ALJ's determination was supported by substantial evidence. Plaintiff's generalizations regarding fibromyalgia and lupus, conditions that are "typically chronic, medically tend to progress" are not borne out by Plaintiff's particular condition in this case, which responded to medication, according to Dr. Lafferty's reports.

Dr. Okoh was Plaintiff's primary care physician in Ocala (before she moved to Orlando in late 2002). He opined on a disability form that Plaintiff's gross dexterity was "2/5" and she had "poor" fine dexterity as of March 26, 2001. R. 68. However, Dr. Lafferty, Plaintiff's treating rheumatologist in Ocala (to whom she was referred by Dr. Okoh) after prescribing different medications for Plaintiff over several months, found on September 12, 2002, that Plaintiff was "doing quite well" and had an

excellent response to IM Depo Medrol injection as well as Vioxx[3]. R. 171. Plaintiff's low back pain resolved after epidural steroid injections. R. 171. She had "occasional achiness in the hands, but this seem[ed] to be manageable" and she had no swelling in the legs. R. 171. On that date, her back had no spinal tenderness and her joints had no synovitis and full range of motion. R. 171. Plaintiff's "possible fibromyalgia" symptoms had resolved as well. R. 172. The ALJ rejected Dr. Okoh's assessment of Plaintiff's lack of dexterity partially on the grounds that it was contradicted by reports of the specialist treating physician, Dr. Lafferty[4], which were more recent and more specific based on his specialized physical examination and ongoing treatment of Plaintiff for her joint pain and related complaints.

In addition to the treating physicians' reports, the only other medical reports of evidence were those of the consultative examining physician, whose examination documented no inflammation in the major joints, a normal range of motion and gate, negative straight leg raises, and normal motor, sensory, and reflex findings, as well as normal grip strength and ability to perform fine manipulations, with no motor deficits in the upper and lower extremities; x-rays of Plaintiff's hands revealed only mild osteoarthritis. R. 130. State agency physicians reviewed the evidence and opined that Plaintiff was capable of light work. R. 131-38, 163-70. Thus, it is clear that the more recent medical evidence did not support the more restrictive dexterity limitations assigned by Dr. Okoh. Dr. Lafferty's reports also reflect that Plaintiff's lupus was under control with medication he prescribed. R. 140-46. Plaintiff testified that the pain medications and anti-inflammatories Dr. Lafferty prescribed relieved

---

[3] Plaintiff previously reported to Dr. Lafferty that Celebrex had helped reduce her pain, but "she stopped it due to concern over side effects that she had read about in the paper." R. 208.

[4] The ALJ referred to Dr. Lafferty's report by the name of his practice group, Ocala Orthopeadic Group, the letterhead on the report.

-6-

her joint pain. R. 229. Accordingly, good cause existed for the ALJ's failure to credit Dr. Okoh's opinion and to rely on the reports of Dr. Lafferty (who was a treating physician) and Dr. Medero.

### B.   Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her pain and ignored evidence of several of her medical conditions – fibromyalgia, diabetes mellitus and sclerodactyly – in the pain evaluation. She contends that the record demonstrates her credibility and that the ALJ failed to provide adequate and specific reasons for discrediting her complaints.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 16. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ recognized that he had to articulate a reasonable basis for his determination. In that respect, in the course of discussing Plaintiff's RFC, the ALJ stated,

> Considering the claimant's testimony versus the medical evidence, the undersigned finds that testimony somewhat exaggerated and inconsistent with the evidence in the case record. The claimant alleged having out of control hypertension, but the evidence generally has shown that her hypertension is under reasonable control with medication. She alleged that she has fibromyalgia, joint pain and numbness, and back and hip pain, but Dr. Medero found normal 5/5 grip strength and fine manipulation and the claimant had full range of motion of all joints except the shoulders, which were

> limited to 120 degrees. He also found that the claimant demonstrated a normal gait and full range of motion of the spine. The claimant alleged that she was "let go" by her employer, but the record shows that she told the physician at the Ocala Orthopaedic Group [Dr. Lafferty] that she quit working and had moved from New York to Florida. . . . The claimant also alleged an inability to lift more than 5 to 10 pounds or walk, stand, or sit for long periods, but the physician at Ocala Orthopaedic Group sent her to physical therapy, and the claimant admitted that she is able to travel to Chicago each year to see her mother (Exhibit 5E/6). While the claimant may have Insulin-dependent diabetes mellitus, there is no evidence in the record that it has caused her any significant problems. She also admitted that she is able to do housework and other chores within her household. Thus, when considering the definitive laboratory and clinical findings, the claimant's subjective complaints are beyond what would reasonably be expected in terms of intensity, duration, or frequency.

R. 16. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ offered specific reasons for discrediting Plaintiff's subjective pain complaints. The ALJ's reasons are supported with citations to the record, and include inconsistencies between Plaintiff's reports and the examination findings, as well as inconsistencies between her statements and her activities of daily living, as well as exercise and travel, all factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. Although Plaintiff claimed to be "let go" by her employer, forms she submitted state she was "offered a package, which [she] accepted since they offered [her] health insurance." R. 74. She also told Dr. Lafferty that she had used a neck brace and wrist splints when she worked in New York, but "threw them out" when she moved. R. 140.

The ALJ was also entitled to discount Plaintiff's testimony that she could not lift more than five to ten pounds or walk, stand, or sit for long periods, based on the medical record which showed she was able to participate in physical therapy (and only stopped going because of the expense  R. 140) and traveled to Chicago each year to see her mother[5]. *See* R. 73; *see also* R. 199 ("She is getting relief with occupational and physical therapy, especially with ultrasound and massage. She also wants to go onto an intermittent exercise program.").

### C. Plaintiff's Literacy in English

Plaintiff contends that the ALJ erred in discounting her inability to communicate well in English because her family and her representative assisted her in completing the forms.  The ALJ determined that although Plaintiff "alleged that she had problems reading and writing English," she was "able to complete questionnaires in the record in which her command of the English language is judged to be quite good by the undersigned," citing Exhibits 3E and 5E.  R. 16-17.  The Commissioner contends, without any argument, that the ALJ was entitled to gauge Plaintiff's English proficiency based on his review of the forms.

A claimant's literacy in Spanish is irrelevant to his ability to find sedentary work in America, where English is the dominant tongue. *Zayas v. Heckler*, 577 F. Supp. 121, 127 (S.D.N.Y. 1983). "This is a nation of immigrants, where hundreds of languages and dialects are spoken. It would be an impossible administrative task for the Secretary to designate jobs specifically for the many claimants who are unable to read or write English, yet are literate in one of the numerous languages spoken in the United States." *Id.* (holding claimant to be disabled).  The SSR will direct a finding of disabled

---

[5]Dr. Lafferty's report reflects that as of August 14, 2001, Plaintiff did not want to be "too sedated" as "she does take care of her mother." R. 140. Plaintiff testified at the hearing on November 19, 2002 that her mother was in a nursing home and she visited her daily. R. 232.

for a person of advanced age if illiterate and unskilled. 20 C.F.R. § 404, Rule 202.01, Subpt. P, App. 2. The term "illiteracy" for Rule 202.01 means illiteracy in English, not illiteracy in all languages.

> The Social Security Regulations state:
>
> The term "education" . . . includes how well you are able to communicate in English, since this ability is often acquired or improved by education. . . . Illiteracy means the inability to read or write. . . . Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in. . . . We will ask you how long you attended school and whether you are able to speak, understand, read and write in English.

20 C.F.R. § 404.1564(b).

It is the Commissioner's burden to establish that a claimant is literate. *Silveira v. Apfel,* 204 F.3d 1257, 1261-62 n.14 (9th Cir. 2000). The ALJ's review of Plaintiff's forms, without more, is not probative of her literacy in English, where she had assistance completing the forms, and Plaintiff testified through an interpreter at the hearing. R. 22; *see Lugo v. Chater*, 932 F.Supp. 498, 502 (S.D. N.Y. 1996) (a brief conversation with the claimant is not probative of her English speaking ability, particularly where an interpreter is used).

Plaintiff testified that she did not read and write well in English, and she required an interpreter at the hearing. R. 235. Plaintiff testified that she worked in an insurance claims department for a shipping company (in New Jersey) for 22 years. R. 233 When the ALJ queried Plaintiff about her past employment, she testified that her former company was Hispanic, Chilean, and presumably the claims were processed in Spanish. R. 233. Although Plaintiff has a high school education and is clearly literate in Spanish, there was not substantial evidence to support the ALJ's determination that Plaintiff was "literate" in English within the meaning of the regulations. The ALJ also failed to make any findings as to whether Plaintiff had any skills that would be transferable to other jobs available

-10-

in the economy.  Therefore, the case is **REVERSED** and **REMANDED** for a finding on the issue of Plaintiff's literacy or transferability of skills.

### *III.  CONCLUSION*

For the reasons set forth in this Order, the decision of the Commissioner is inconsistent with the requirements of law and is not supported by substantial evidence.  Accordingly, the Court **REVERSES and REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 9, 2005.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record